## IN THE UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

### USCA Case No. 14-11449-D
### United States District Court, Middle District of Florida
### Case No.: 3:11-cv-390-MMH-JRK

### JASON AND RACHELLE LANKHORST
**Plaintiffs/Appellants,**

**v.**

### INDEPENDENT SAVINGS PLAN COMPANY d/b/a ISPC,
**Defendant/Appellee.**

**On Appeal from a Final Judgment Order of the United States District Court, Middle District of Florida**

### AMENDED REPLY BRIEF OF APPELLANTS
### JASON AND RACHELLE LANKHORST

William C. Bielecky, Esq.
Law Offices of William C. Bielecky, PA
400 Capital Circle SE, Ste 18, Box 300
Tallahassee, FL  32301
Telephone: (850) 521-0022
Facsimile:   (850) 521-0025
bilek@nettally.com

Bambi Lynn Drysdale, Esq.
Jacksonville Area Legal Aide, Inc.
126 W. Adams Street
Jacksonville, FL  32202
Telephone:  (904) 356-8371, Ext. 306
Facsimile:  (904) 224-1587
Lynn.drysdale@jaxlegalaid.org

Brian William Warwick, Esq.
Janet R. Varnell, Esq.
Varnell & Warwick P.A.
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

### ATTORNEYS FOR APPELLANTS

# TABLE OF CONTENTS

**Contents**

TABLE OF CONTENTS..........................................................................i

TABLE OF CITATIONS .......................................................................ii

I.      INTRODUCTION ......................................................................1

II.     THE TILA RESCISSION RIGHTS AND ADDITIONAL PROTECTIONS REQUIRED BY 15 U.S.C. §1635 APPLY TO ISPC'S CREDIT AGREEMENT................................................................................2

   A.  ISPC's Ability to Lien the Consumer's Home under Paragraph 23 of its Credit Agreement Triggers the Right of Rescission and other Protections provided by 15 U.S.C. §1635. ...............................3

   B.  The "Two Contract Dodge" Does Not Exclude ISPC from TILA's Delay of Creditor's Performance Rule. ....................................8

III.    ISPC'S CREDIT AGREEMENT TRIGGERS THE ADDITIONAL DISCLOSURES REQUIRED BY 15 USC §1637(A)..................................12

IV.     THIS IS NOT A UCC CASE ....................................................14

V.      CONCLUSION..........................................................................16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS 18

CERTIFICATE OF SERVICE ...............................................................19

# <u>TABLE OF CITATIONS</u>

## <u>Cases</u>

*Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir.2004) ...........14

*Doggett v. County Savings & Loan Association*, 373 F. Supp. 774 (E.D. Tenn. 1973) ...................................................................................................................12

*FGB Realty Advisors v. Bennett*, 44 Conn. Supp. 156, 160, 672 A.2d 545, 546 (Conn. Super. Ct. 1995) .......................................................................................15

*Heuer v. Forest Hill State Bank*, 728 F. Supp. 1199, 1200 (D. Md. 1989) aff'd, 894 F.2d 402 (4th Cir. 1990) .....................................................................................16

*In re Clark,* 161 B.R. 290, 292 (Bankr. N.D. Fla. 1993)………………………….13

*Milligan v. Sentry Exteriors, Inc.,* 00-CIV-2279(WJM), 2005 WL 1229791 (D.N.J. 2005) .....................................................................................................................11

*N. C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1216 (2d Cir. 1973)..................................................................................................7

*Rudisell v. Fifth Third Bank*, 622 F.2d 243, 250- 51 (6th Cir. 1980) ........................6

*Taylor v. Domestic Remodeling, Inc.,* 97 F.3d 96, 97-98 (5th Cir. 1996) ........ 11, 12

*Tustian v. Schriever*, 34 P.3d 755, 761 (UT 2001) ..................................................15

*Zakarian v. Option One Mortg. Corp.*, 642 F. Supp. 2d 1206, 1213-14 (D. Haw. 2009) ......................................................................................................................3

## <u>Statutes</u>

Fla. Stat. § 222 et seq. ...............................................................................................8

12 CFR 226.15(c)................................................................................................ 8, 9, 10

12 CFR 1026(a)(25) ................................................................................................1, 2

15 U.S.C.  §1635(a) ........................................................................................ 2, 4, 5, 6

15 U.S.C. §1635 ................................................................................................. passim

15 U.S.C. §1637(a)……………………………………………………14, 15, 16

**<u>Other Authorities</u>**

Lea K. Shepard, *It's All About the Principal: Preserving Consumers' Right of Rescission Under the Truth in Lending Act*, 89 N.C.L. REV. 171, 191 at n. 121 (2010-2011).................................................................................................................3

# I.    INTRODUCTION

ISPC's argument that it does not have a "mortgage" or a right to "foreclose," does not mean that the loan is not "secured" by the consumer's principle dwelling[1] for TILA disclosure purposes.  "Security Interest" is defined broadly by Reg. Z as "an interest in real property that secures performance of a consumer credit obligation…"  Reg. Z 1026.2(a)(25).   Through its "Open End Credit Agreement and Application" ("Credit Agreement"), ISPC uses the consumer's home to secure "performance" of the consumer's debt.  In its' brief on appeal, ISPC makes four critical admissions which illustrate that ISPC uses the consumer's home to secure performance of the debt:

(1) "Paragraph 23, thus, does no more than ***establish ISPC's entitlement to be paid in full if the home is sold or conveyed*** to a third party."  (Appellee's Brief at 34) (emphasis added).

(2) "When a homeowner desires to refinance his first mortgage, and there is a properly recorded fixture filing, the creditor has the option of entering into a subordination agreement ***in order to subordinate its <u>superior position</u>*** [on the title to the real property] as an accommodation to the new lender."  (Appellee's Brief at 36) (emphasis added).

(3) "Indeed, the clear language in paragraph 23 unambiguously provides that ISPC's remedy **is payment in full upon the sale, conveyance, or mortgage refinancing**."  (Appellee's Brief at 35-36)(emphasis added).

---

[1] Plaintiffs do not concede that ISPC cannot legally foreclose the homeowner's property pursuant to the language of its contract.

1

(4) "Choosing not to enter into a subordination agreement merely requires the consumer—if requested by ISPC—to pay off its debt for the goods financed **before the mortgage is refinanced**. (Appellee's Brief at 36) (emphasis added).

These admissions completely contradict ISPC's position that it does not take a security interest in the Class Members' real property. If consumers cannot freely transfer title to their homes under the terms of ISPC's contract and fixture filing, then the loan must be considered "an interest in real property that secures performance of a consumer credit obligation…" Reg. Z 1026.2(a)(25). It is this encumbrance upon the free transfer of real property that triggers the additional TILA disclosures required by 15 U.S.C. §1635 and/or §1637(a).

## II.   THE TILA RESCISSION RIGHTS AND ADDITIONAL PROTECTIONS REQUIRED BY 15 U.S.C. §1635 APPLY TO ISPC'S CREDIT AGREEMENT.

Unlike other provisions of TILA, the statutory right to rescind and other protections provided pursuant to 15 U.S.C. §1635 apply if there is a security interest taken in the consumer's home or if a security interest may be taken in the future. First, ISPC argues that §1635 does not apply to this transaction. Second, ISPC argues, even if §1635 applies, it is absolved of liability where ISPC has its merchant obtain a separate agreement. However, ISPC's Credit Agreement contains specific language triggering §1635, and ISPC's relationship with its merchant is too intertwined to avoid the Delay of Performance Rule.

2

### A. ISPC's Ability to Lien the Consumer's Home under Paragraph 23 of its Credit Agreement Triggers the Right of Rescission and other Protections provided by 15 U.S.C. §1635.

It is uncontested that the water equipment at issue is a "home improvement" that was sold to Class Members by WET, and financed by ISPC through WET. WET was ISPC's agent, and no other ISPC agent or representative had any direct contact with the Class Members until after ISPC's Credit Agreement was delivered and executed by and through WET. This type of arrangement, where the home improvement seller arranges financing for the consumer, is precisely the reason Congress included a three day right of rescission into TILA.

Congress created the statutory rescission right under § 1635 to "protect home owners from certain sharp practices of home improvement contractors . . . by creating a rescission right for home improvement loans that were secured by residential mortgages on existing dwellings." Zakarian v. Option One Mortg. Corp., 642 F. Supp. 2d 1206, 1213-14 (D. Haw. 2009); see also Lea K. Shepard, It's All About the Principal: Preserving Consumers' Right of Rescission Under the Truth in Lending Act, 89 N.C.L. REV. 171, 191 at n. 121 (2010-2011) (Congress created a rescission remedy to "protect homeowners from abuse by dishonest home improvement contractors who made questionable 'home improvements' financed by loans secured by borrowers' homes.") (citing S. Rep. No. 96-368 at 28 (1980), reprinted in 1980 U.S.C.N.N. 236, 264, which states that "this provision was

enacted to give the consumer the opportunity to reconsider any transaction which would have the serious consequence of ***encumbering*** title to his home.") (emphasis added).

To effectuate this aim of protecting homeowners, TILA's §1635 rescission statute is broader than that of §1637(a), because it applies not only to loans taking a security interest in real property, but also to security interests that may arise in the future. 15 U.S.C. §1635. Specifically, §1635 applies to "any consumer credit transaction…in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. §1635(a).

Paragraph 23 of ISPC's Credit Agreement details precisely how a lien against the consumer's home could arise in the future.

> 23. <u>FAILURE TO PAY</u> – If YOU do not pay on time; fail to comply with any terms of this Agreement; have made any warranty or representation which is false or misleading; YOU die; **sell or convey the real property on which Purchased equipment is installed;** dispose of, assign, transfer or encumber the Purchases subject to our security interest; or if in our exclusive judgment WE deem ourselves insecure as to the prospects for repayment by YOU, then YOU will be deemed in default. In such "Event of Default," YOU agree as follows:
>
> • • •

4

(j) Pursuant to F.S. 222 et seq., [Florida's Homestead Exemption Statute] as amended, YOU agree as follows: [1.] For either post judgment execution and/or consensual UCC-1 lien/security interest purposes, "Purchases" made by YOU  pursuant hereto are for "labor, services, or materials furnished to repair or improve real property"; and [2.] Judgments resulting from an **"Event of Default" hereunder and/or from any consensual UCC-1/lien/security interest as described herein**, **constitutes valid enforceable liens against YOUR homestead property and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property**; and [3.] YOU waive and deem inapplicable any referenced provision which may allow a homestead sale or mortgage to be completed free and clear of judgments and/or consensual UCC-1/liens/security interests.

(Appendix Volume I, Doc. 136-4 at ¶ 23.) (emphasis added).  Thus, the language of Paragraph 23 meets the definition of a security interest that triggers the protections provided for under §1635(a).

ISPC even admits in its Response Brief that this language enables it to demand payment in full before the home can be sold, conveyed, or refinanced:

Section 222.01(5)(c) contains certain exemptions—one of which is an exemption for "[l]iens and judgments for labor, services, or materials furnished to repair or improve real property."  Subsection (j)—mirroring that language—states that the consumer's purchases will be deemed to be for "labor, services, or materials furnished to repair or improve real property." **…**

(Appellee's Brief at 35-36).    Thus, the language in paragraph 23 clearly and unambiguously provides that ISPC's remedy **is – at the very least - payment in full upon the sale, conveyance, or mortgage refinancing**.

Under §1635, this contract language creates a "security interest" which "is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. §1635(a).  ISPC's Credit Agreement, therefore, creates a security interest in the consumer's home under §1635(a) of TILA.

Other courts have reached this same conclusion even in the absence of such straightforward contractual language.   In <u>Rudisell v. Fifth Third Bank</u>, 622 F.2d 243, 250- 51 (6th Cir. 1980), the Sixth Circuit determined that the mere possibility of a mechanic's lien creates a security interest under TILA's §1635(a), despite the fact that the contract provided for no such right, because the lien arises by operation of law, and even though the lien may never actually be taken.  <u>Id.</u>

The Second Circuit came to the same result when examining interests taken in the home by home improvement sellers in light of TILA:

> It is clear to us that in Section 125 (a) [section 1635(a)] Congress intended to establish a national policy of protecting consumers whose residences are jeopardized *by operation of all types of security interests acquired by creditors in the home improvement industry*, and that the goal was to provide uniform protection throughout the nation, irrespective of the vagaries among the states'

6

lien laws. Because of the various differences among the states in the treatment of statutory liens, and the opportunities for evasion of Section 125(a) which these differences make possible, *consumers can be effectively protected only if all statutory liens are included within the regulatory ambit of that Section*. With an awareness of the multifarious pitfalls created by statutory liens, through which a homeowner may unwittingly lose one of his most precious possessions, his home, *it would be most incongruous for us to construe Section 125 (a) in the manner urged by the appellees: that is, that Congress intended the statute to require disclosure and three-day right of rescission as to some, but not all, of the various security interests created by a home improvement contract*. We think that the only way in which the Act's objective of "meaningful disclosure" of credit terms may be achieved is if the *various statutory liens are included and treated uniformly under the Truth-in-Lending Act*; this Congress intended through the operation of Section 125 (a), and this the Federal Reserve Board recognized in 12 CFR §226.9 (a). *Carving statutory liens out of the protection provided by Section 125 (a) would not only render impossible such uniformity among the states, it would defeat the goal of providing "meaningful" disclosure to the consumer*. We refuse to perform such a surgical procedure.

N. C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys., 473 F.2d 1210, 1216 (2d Cir. 1973) (emphasis added).

ISPC's Credit Agreement goes well beyond just referencing statutory liens created by operation of law. First, because liens against homestead property cannot be created under Florida law for judgments related to personal property,

7

ISPC forces the consumer to "agree" that the purchases made under the Credit Agreement are for "labor, services, or materials furnished to repair or improve real property." (Appendix Volume I, Doc. 136-4 at ¶ 23.) By forcing consumers to agree that all purchases are home improvements, ISPC enables itself to lien the homestead property of the consumer under section 222 et seq., Fla. Stat. Without this contractual provision, no lien could lie against the consumer's homestead property. As a result, the three day rescission period and other provisions of §1635 apply to the liens created by ISPC in paragraph 23 of its Credit Agreement, including the Delay of Creditor's Performance Rule under Reg. Z 226.15(c).

### B. The "Two Contract Dodge" Does Not Exclude ISPC from TILA's Delay of Creditor's Performance Rule.

ISPC also argues that TILA's Delay of Creditor's Performance Rule (Delay Rule) does not apply because WET had its own contract with the consumer. However, the Rule still applies where the relationship between ISPC and WET is so intertwined.

Reg. Z's Delay of Creditor's Performance Rule states:

> **(c) Delay of creditor's performance.** Unless a consumer waives the right to rescind under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed, and no materials delivered until after the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded. A creditor does not violate this section if a third party with no knowledge of the event activating the rescission right does not delay in providing materials or

> services, as long as the debt incurred for those materials or services is not secured by the property subject to rescission.

12 CFR 226.15(c).  Thus, according to the second sentence, a third party creditor may avoid violating the Delay Rule where it has "*no knowledge*" of a merchant's practices.  ISPC is not a lender that is removed from the underlying sales tactics of its merchant WET.

The sales and financing arrangement orchestrated by ISPC and its merchants is precisely why Congress created the Delay Rule.  After a high pressure sales presentation convinced them their tap water was unsafe to drink, the Lankhorsts agreed to purchase the product, but stated that they would need financing because they could not afford the $6,995 price. (Appendix Volume I, Doc. 63-1).  WET assured the Lankhorsts that it could obtain financing on their behalf at a good interest rate.  However, WET insisted -- as is its standard practice -- that the system be installed within 24 hours.  (Appendix Volume II, Doc. 141-1, pp. 30-31).

ISPC never met with any class member.  Instead, ISPC trained WET's employees how to complete its Credit Application and how to present the terms to the consumer.  (Appendix Volume VI Doc. 136-1/S-162[2], pp. 16-17; Appendix Volume VII, Doc. 136-3/S-163, pp. 2-3.)  Several days after the installation,

---

[2]   R.W. Schabes Deposition Transcript with Exhibits, Exhibit 1 to Plaintiffs' Motion for Partial Summary Judgment (Doc.136-1), was filed under seal as (Doc. S-162) pursuant to the District Court's Order (Doc. 154).

another WET employee presented the Lankhorsts with an ISPC Credit Agreement with a 17.9% interest rate. (Appendix Volume IV, Doc. 141-22, pp. 29-30.) Importantly, ISPC's Credit Agreement was backdated so that the three-day right to cancel was listed as three days after the date of the initial sale. (Appendix Volume II, Doc. 141-1, p. 32-33; <u>see also</u> Appendix Volume I, Doc. 63-2) Thus, on the face of the ISPC Credit Agreement, it appeared that the three-day right to cancel had already expired before any credit terms were even disclosed to the Lankhorsts.

As stated above, the Delay Rule does not apply to creditors "with no knowledge of the event activating the rescission right." 12 CFR 226.15(c). By either advising, or at least allowing WET to back date the Credit Agreements, and by allowing WET to install the equipment before disclosing the credit terms, ISPC knowingly participated in a scheme intended to force the consumer to execute the financing at the excessive interest rate without the benefit of appropriate disclosures.

ISPC argues it cannot be held liable for the actions of WET. However, WET acted as ISPC's agent in obtaining the Lankhorsts' credit information on the night of the sale, and by delivering the ISPC Credit Agreement to them <u>after</u> the equipment was already installed. ISPC also fails to mention that the very water equipment that it finances is sold to WET by ISPC's sister company, The LeverEdge. (Appendix Volume VII, Exhibit 1 to Schabes Deposition at ¶ 8).

10

Accordingly, ISPC controls WET through its Merchant Agreement; it controls the water equipment being provided through LeverEdge; and, it controls the financing through its own ISPC Credit Agreement.  This is not a situation where the finance company is unrelated to the merchant and takes action without knowledge of the transaction.  Therefore, the single case cited by ISPC in support of its position -- Milligan v. Sentry Exteriors, Inc., 00-CIV-2279(WJM), 2005 WL 1229791 (D.N.J. 2005) -- is entirely distinguishable, and inapplicable.

In contrast, directly on point is Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 97-98 (5th Cir. 1996), where a home improvement seller started construction on a home addition before the three-day rescission period under §1635 had expired.  As here, the lender had backdated the loan documents so that it appeared as of the rescission period had already expired.  Id.  As to the Delay Rule, the Fifth Circuit held:

> Even if the Taylors should have been reasonably aware that the cooling-off period did not terminate until after they had received both the notice and the disclosures, by that time the construction was as complete as it would ever be, and they were facing a *fait accompli*.  Had Green Tree, as a creditor, reviewed the documents to assure that they complied with TILA before disbursing the loan proceeds, it would have been obvious that the notice of right to rescind was defective, and Green Tree could have withheld disbursement of the loan proceeds to Domestic until all TILA requirements had been met.

11

Id., at 99; See also Doggett v. County Savings & Loan Association, 373 F. Supp. 774 (E.D. Tenn. 1973). Taylor illustrates how the Delay Rule is intended to be enforced. If the creditor reviews the loan documents and disclosures for approval before any work has been completed, the proper disclosures can be made to the consumer and the three-day rescission period can be utilized if necessary. If, however, ISPC is allowed to have its merchants -- acting on ISPC's behalf -- install the equipment within the three-day rescission period and then backdate the documents so that consumers feel obligated to execute the Credit Agreement, then the underlying purpose of TILA is contravened. TILA's Delay Rule places the burden on the party with the money (ISPC) to make certain that the disclosures and time period set forth in the statutes are obeyed, because it is in the best position to do so. This Court should apply the reasoning in Taylor to ensure that the purposes of TILA are fulfilled.

## III. ISPC'S CREDIT AGREEMENT TRIGGERS THE ADDITIONAL DISCLOSURES REQUIRED BY 15 U.S.C. §1637(A)

ISPC's Credit Agreement clearly contemplates much more than a security interest in the water equipment. The plain language of the contract creates an interest in the consumer's home sufficient to also trigger the additional protections of TILA §1637(a), which states:

> **(a) Application Disclosures**
> In the case of any open end consumer credit plan which provides for any extension of credit which is *secured by the*

12

> ***consumer's principal dwelling***, the creditor shall make []
> disclosures in accordance with subsection (b) of this section.

15 U.S.C. §1637(a)(emphasis added).

ISPC argues that §1637(a) does not apply because its "security interest" is limited to "water equipment" under paragraph 11 of its Credit Agreement, and its fixture filing. However, ISPC also admits that "'security interests' are consensual and arise by the parties' agreement." (Appellee's Brief at p. 32, citing <u>In re Clark</u>, 161 B.R. 290, 292 (Bankr. N.D. Fla. 1993) (emphasis added)). Inexplicably, ISPC ignores the plain, unambiguous language contained in paragraph 23 of its Credit Agreement that does exactly that:

> Pursuant to F.S. 222 et seq., [Florida's Homestead Exemption Statute] as amended, YOU agree as follows: … Judgments resulting from an "Event of Default" hereunder and/or from any consensual UCC-1/lien/security interest as described herein, ***constitutes valid enforceable liens against YOUR homestead property*** and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property … (Emphasis added).

The language cited above clearly "provide[s] for an extension of credit which is secured by the consumer's principle dwelling." 15 U.S.C. §1637(a). As a result, the TILA disclosures required by 1637(a) were triggered at the time the

ISPC's Credit Agreement was provided to the Lankhorsts.[3]  TILA is a disclosure statute that is to be liberally construed in favor of the consumer.  Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1065 (11th Cir.2004). If creditors are allowed to insert language securing performance of the debt into their credit plans, and then simply ignore it for disclosure purposes, TILA would be rendered meaningless.  No further analysis is necessary to determine that ISPC violated TILA because it admits that it did not provide the disclosures required by §1637(a)(9).

## IV.    THIS IS NOT A UCC CASE

ISPC wants this Court to delve into the intricacies of UCC law to determine this case.  However, the UCC is not implicated in this case. The UCC was developed to promote uniformity among the states' law relating to commercial transactions.  This case must be viewed in light of the Congressional purposes and intent of the Truth in Lending Act.  This Court's decision must be decided under §§ 1635 and/or 1637(a), and fully consider the language of ISPC's Credit

---

[3] ISPC attempts to mislead this Court by repeatedly referencing "home equity" loans under 15 U.S.C. § 1637(a).  While home equity loans are certainly covered under this section of TILA, § 1637(a) covers "any open end consumer credit plan which provides for any extension of credit which is secured by the consumer's principal dwelling…"  15 U.S.C. 1637(a).  ISPC's home improvement loan falls within this definition.

Agreement rather than through the murky lens of the UCC fixture analysis suggested by ISPC.

Not one of the cases cited by ISPC involves a "security interest" as interpreted by TILA. In fact, none of its cases even involve TILA claims. See, e.g., Tustian v. Schriever, 34 P.3d 755, 761 (UT 2001) (involving the priority of fixture filing under Utah law; no TILA claim asserted and no contract language creating security interest was interpreted.); FGB Realty Advisors v. Bennett, 44 Conn. Supp. 156, 160, 672 A.2d 545, 546 (Conn. Super. Ct. 1995) (the issue before the court was which party had priority for a UCC-1 fixture filing under Connecticut law; no TILA claim asserted, and no contract language creating security interest was interpreted.). Thus, the cases interpreting priority interests under the UCC are wholly irrelevant to the TILA case at bar.

Under TILA, "security interest" is broadly defined as "any interest in real property that is used to secure payment of a consumer credit obligation." For the reasons stated above, ISPC's Credit Agreement uses the consumer's homes to secure payment of the debt. As a result, the additional disclosures provided by §1637(a) should have been given by ISPC. The trial court's summary judgment order should be reversed on this basis and judgment should be entered in favor of the Plaintiff Class.

15

## V.    CONCLUSION

The Congressional purpose in creating TILA's statutory rescission right in the first place, was "to protect home owners from certain sharp practices of home improvement contractors (and those financing such contractors), by creating a rescission right for home improvement loans that were secured by residential mortgages on existing dwellings." Heuer v. Forest Hill State Bank, 728 F. Supp. 1199, 1200 (D. Md. 1989) aff'd, 894 F.2d 402 (4th Cir. 1990).

Through its Credit Agreement and UCC-1 fixture filing, ISPC admits that it:

(1)    is entitled to be paid in full if the home is sold or conveyed to a third party.  (Appellee's Brief at 34).

(2)    can prevent a homeowner from refinancing their home.   (Appellee's Brief at 36).

(3)    can require payment in full of the ISPC loan upon the sale, conveyance, or mortgage refinancing of the home.  (Appellee's Brief at 35-36).

Yet, the trial court determined that ISPC's security interest covered only "personal property" and therefore, the TILA disclosures required by §§ 1635 or 1637 did not apply.  This finding is completely contrary to the underlying purpose of TILA because the consumer class members were not provided timely TILA disclosures which would have informed them that their homes were being used to secure

16

payment of these loans.  As a result, the trial court's summary judgment order should be reversed and judgment should be entered in favor of Appellants.

/s/ Brian W. Warwick
Brian William Warwick
Janet Varnell
Varnell & Warwick, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

17

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

    1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

> ☑ this brief contains 3,874 words according to Microsoft Word 2010 word count, excluding the parts the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii)

    2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

> ☑ this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2010* in 14-point Times New Roman.

/s/ Brian W. Warwick
Brian William Warwick
Janet Varnell
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2015, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I also further certify that a copy of the foregoing document was sent by United States Mail to the following:

Murray B. Silverstein
Kimberly S. Mello
Jonathan S. Tannen
GREENBERG TRAURIG, P.A.
Courthouse Plaza, Suite 100
625 East Twiggs Street
Tampa, FL  33602

*Attorneys for Appellee Independent Savings Plan Company*

/s/ Brian W. Warwick
Brian W. Warwick
Janet R. Varnell
VARNELL & WARWICK, P.A.
P.O. Box 1870
Lady Lake, FL 32158
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com

19